IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE RENEE LAMB,

    **Plaintiff,**

v.                                                                      CASE NO. 23-3239-JWL

LAURA KELLY, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Topeka Correctional Facility in Topeka, Kansas ("TCF"). Plaintiff has paid the filing fee. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 12).

**I. Nature of the Matter before the Court**

Plaintiff, a transgender female, alleges in her Amended Complaint that Defendants are discriminating against Plaintiff by keeping her in restricted housing based on an unfounded and groundless allegation. (Doc. 12, at 2.) Plaintiff alleges that Defendant Megan Davis, then classifications administrator at TCF, wrote a letter based on false information, that was approved by Defendant Warden David McCabe. *Id*. at 5.

Plaintiff received a Disciplinary Report that provides:

> A review of the overhead cameras, found at 8:19 a.m. on 10/10/23, Resident Lamb was out in the restrictive yard area and being escorted back to Pod 4, through door 4, 107, and Resident Adams #107534 who was out on yard, approach each other give each other a hug that continues through another squeeze—appearing to be a "double hug". Resident Lamb is managed as a sex offender and this is against both the KDOC rule book and IMPP referenced above.

(Doc. 12–1) (citing 44-12-315a Lewd Act (Class I) Ref: IMPP 11-115).

Plaintiff alleges that K.A.R. 44-12-315(a) is being illegally interpreted and that managing her as a sex offender, when she has not been convicted of a sex offense, constitutes an illegal ex post facto application of the Sex Offender Registration Act. (Doc. 12, at 5–9.) Plaintiff alleges that her hug should not be interpreted as a lewd act, it was not sexual in nature, and that "this rule is almost never enforced . . . [w]omen 'hug' everyday without getting a DR." *Id*. at 9. Plaintiff alleges that this was targeted discrimination. *Id*.

Plaintiff alleges that she is being denied the privileges and incentives afforded to inmates in general population at TCF. She alleges that this constitutes an atypical and significant hardship in violation of her due process rights. Plaintiff seeks to be transferred to general population. *Id*. at 10.

Plaintiff names as defendants: Laura Kelly, Governor of Kansas; David McCabe, TCF Warden; Megan Davis, Retired Classifications Administrator at TCF; Dalton Hartpence, Classifications Administrator at TCF; and John and/or Jane Does 1–10, Agents or Employees of the Kansas Department of Corrections ("KDOC"). In addition to seeking transfer to general population, Plaintiff also seeks: the appointment of a master to review the treatment of transgender women at TCF; an abolishment of long-term restrictive housing and Other Security Status at TCF and a finding that they violate the Eighth Amendment; declaratory relief; an order directing TCF to discontinue managing Plaintiff as a sex offender; a finding that K.A.R. 44-12-315(a) must be revoked and replaced with language that correctly interprets the law; order that Plaintiff's Disciplinary Report be expunged; and order TCF to grant Plaintiff and Resident Adams' request to be roommates. *Id*. at 10–13.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court,

a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Defendants

#### A. Governor Kelly

Plaintiff has named Governor Kelly as a defendant. Eleventh Amendment immunity extends to suits brought by citizens against their own state and to "suit[s] against a state official

4

in his or her official capacity" because such suits are "no different from a suit against the State itself." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  However, this immunity is not absolute, and "[u]nder the *Ex parte Young* exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief." *Id*. (citing *see Ex parte Young*, 209 U.S. at 159–60, 28 S. Ct. 441; *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)).

"To satisfy this exception, the named state official 'must have some connection with the enforcement' of the challenged statute . . . [o]therwise, the suit is 'merely making [the official] a party as a representative of the state' and therefore impermissibly 'attempting to make the state a party.'" *Id*. (citing *Ex parte Young*, 209 U.S. at 157).  The Tenth Circuit has found that:

> "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact." *Id. Ex parte Young* does not require that the state official "have a 'special connection' to the unconstitutional act or conduct." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007). But it does require that the state official "have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Id.* (quoting *Ex parte Young*, 209 U.S. at 157, 28 S. Ct. 441); *see also* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3524.3 (3d ed., Oct. 2020 update) ("[T]he duty must be more than a mere general duty to enforce the law.").

*Id*.

The regulation at issue in this case provides that "[n]o inmate shall engage in a lewd or lascivious manner in any act of kissing, fondling, touching, or embracing, whether with a person of the same or opposite sex."  K.A.R. 44-12-315(a).  The regulation provides that it is authorized by and implements K.S.A. 75-5210 (2006 Supp.).  That statute provides that "[t]he secretary

5

shall adopt rules and regulations for the maintenance of good order and discipline in the correctional institutions, including procedures for dealing with violations." Kan. Stat. Ann. 75-5210(f).

Plaintiff has not alleged that Governor Kelly is responsible for enforcing the regulation at issue. Therefore, the Governor does not fall within the *Ex parte Young* exception and thus has Eleventh Amendment immunity to this suit. *See Hendrickson*, 992 F.3d at 965. Plaintiff should show good cause why her claims against Governor Kelly should not be dismissed as barred by Eleventh Amendment immunity.

### B. John and/or Jane Does 1–10

Plaintiff names John and/or Jane Does 1–10 as defendants, but has failed to allege how these defendants personally participated in the deprivation of her constitutional rights. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Plaintiff's Amended Complaint does not make allegations regarding the John/Jane Doe defendants. While a plaintiff initially may sue unknown defendants by naming them as "John Doe," that permission does not last forever. "[T]he Federal Rules of Civil Procedure [do] not permit such actions against unnamed defendants following a suitable length of time for the plaintiff to identify the John Does." *Culp v. Williams*, 456 F. App'x 718, 720 (10th Cir. 2012) (unpublished). Plaintiff filed this lawsuit on November 1, 2023, and has not identified the Doe defendants, or alleged any facts capable of supporting a claim against them, whoever they are.

Plaintiff only mentions a small group of "hater staff" in her request for relief. (Doc. 12, at 13.)  A reference to "staff" is insufficient.  An assertion of collective responsibility fails to adequately allege a claim for relief against a specific defendant or to show personal responsibility by an individual defendant.  *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249–50 (10th Cir. 2020) (citing *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)).  A plaintiff alleging civil rights violations must "isolate the allegedly unconstitutional acts of each defendant" such that her allegations "provide adequate notice as to the nature of the claims against each" defendant.  *Robbins v. State of Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).  Allegations that a plaintiff's "rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations" are insufficient to support § 1983 claims.  *Pahls*, 718 F.3d at 1228 (citations omitted).  Plaintiff should show good cause why her claims against the John/Jane Doe defendants should not be dismissed.

**2.  Disciplinary Report**

Plaintiff seeks to have her disciplinary record expunged.  Such a claim must be brought as a petition for habeas corpus under 28 U.S.C. § 2241.  *See Buhl v. Hood*, 81 F. App'x 273, 274 (10th Cir. 2003) (unpublished) (citing *see, e.g., Hamm v. Saffle,* 300 F.3d 1213, 1216 (10th Cir. 2002) (construing § 2254 habeas corpus action challenging prison disciplinary proceeding as action brought under § 2241); *Easter v. Saffle,* 51 Fed. Appx. 286, 288–89 (10th Cir. 2002) (noting that where claims necessarily imply invalidity of punishment imposed by disciplinary proceeding, they cannot be brought under § 1983) (unpublished); *Caserta v. Kaiser,* No. 00–6108, 2000 WL 1616248, at *2 (10th Cir. Oct. 30, 2000) (noting that determination of "issues concerning prison disciplinary proceedings," are properly brought under § 2241) (unpublished); *Blum v. Fed. Bureau of Prisons,* No. 98–1055, 1999 WL 638232, at *1 (10th Cir. Aug. 23, 1999)

8

(recognizing federal prisoner's challenge to disciplinary proceeding brought under 28 U.S.C. § 2241) (unpublished); *Reed v. Smith,* No. 97–6341, 1999 WL 345492, at **1–2 (10th Cir. June 1, 1999) (challenge to federal prison disciplinary proceeding not cognizable in *Bivens* action, but rather belongs under habeas corpus) (unpublished); *Brown v. Smith,* 828 F.2d 1493, 1494–95 (10th Cir. 1987) (construing civil rights complaint as also invoking § 2241 jurisdiction where prisoner challenged disciplinary proceedings)).

Generally, a federal prisoner must exhaust available administrative remedies before commencing a habeas corpus petition under 28 U.S.C. § 2241. *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam); *see also Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement.") (citation omitted)).

### 3. Due Process, Discrimination and Ex Post Facto Claims

Plaintiff alleges that she has been subjected to an atypical and significant hardship. Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular

prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).

Plaintiff alleges that her assignment imposed atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff also claims that she is being discriminated against based on her transgender status, and that managing her as a sex offender violates the Ex Post Facto Clause. In *Hill v. Simmons*, the Kansas Court of Appeals ("KCOA") found that IMPP 11-115[1] did not violate the Ex Post Facto Clause, as it "provides that an inmate may be managed as a sex offender while confined in prison and while on postrelease supervision, based on the inmate's conduct *while in*

---

[1] IMPP 11-115A defines a sex offender as including a resident "[w]hose sexual behavior during incarceration or while in the community following incarceration has been documented by a disciplinary conviction or revocation of post-incarceration supervision, and which then leads to the resident receiving an override to be managed as a sex offender." Internal Management Policy & Procedure 11-115A, DECISION MAKING: Sex Offender Program, Management and Supervision.

*prison.*" *Hill v. Simmons*, 33 Kan. App. 2d 318, 321 (2004) (emphasis added).  The KCOA found that application of the IMPP is not retrospective in nature and does not increase the penalty the plaintiff is to serve, rather "[t]he policy is simply an administrative measure designed to enhance security of the facility and the rehabilitation of sex offenders." *Id*.  IMPP 11-115A provides procedures for managing inmates as sex offenders, including procedures for screening, due process hearings, and notification to inmates.  *See* IMPP 11-115A, DECISION MAKING: Sex Offender Program, Management and Supervision.  It is unclear how the determination was made to manage Plaintiff as a sex offender, or what procedures were followed.

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate KDOC officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate KDOC officials of to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IV. Motion to Dismiss 2nd Motion to Add Second Plaintiff**

On November 1, 2023, the Court entered a Notice of Deficiency (Doc. 2) ("NOD") because Plaintiff's Complaint was not on a Court-approved form and she failed to either pay the civil action filing fee or to file a motion for leave to proceed in forma pauperis. The Court granted Plaintiff until December 1, 2023, to cure the deficiencies and the Clerk provided Plaintiff with the correct forms. On November 9, 2023, Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. 3).  The Court entered an Order (Doc. 5) denying the motion because it did not include a proposed amended complaint as required by D. Kan. Rule 15.1(a)(2), and

because the Court had already instructed Plaintiff in the NOD that she must submit her complaint on the Court-approved form that was provided to her.

Plaintiff submitted her Complaint (Doc. 6) on the Court-approved form, but then filed her Second Motion for Leave to File an Amended Complaint (Doc. 7). In the motion, Plaintiff indicated that she would like to add another plaintiff to her Complaint. Plaintiff again failed to include a proposed amended complaint as required by D. Kan. Rule 15.1(a)(2). Therefore, the Court entered a Memorandum and Order (Doc. 8) denying the motion and granting Plaintiff until December 18, 2023, to submit a complete amended complaint on the Court-approved form.

Plaintiff has now filed a motion (Doc. 11) indicating that she seeks to dismiss her request to add a second plaintiff in this case. Because the Court has already entered a Memorandum and Order denying the motion, Plaintiff's current motion is moot and therefore denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Dismiss 2nd Motion to Add a Second Plaintiff (Doc. 11) is **denied as moot.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **January 11, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's claims against Governor Kelly and John and/or Jane Does 1–10 should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that**:**

(1) The Court will enter a separate e-service order directing the Clerk of Court to serve Defendants McCabe, Davis and Hartpence.

(2) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Amended Complaint. If the Amended Complaint survives screening, the Court will enter a separate order setting an answer

deadline. Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3) Officials responsible for the operation of TCF are directed to undertake a review of the subject matter of the Amended Complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(6) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7) No motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(8)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, Defendants, counsel for the KDOC, and the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

**Dated December 12, 2023, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**